UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA WATSON,

    Plaintiff,

v.                                                                                      Case No. 8:21-cv-1212-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an unfavorable decision regarding her application for Supplemental Security Income ("SSI"), alleging disability beginning July 2, 2018. (Tr. 17.) Following an administrative hearing held on October 5, 2020, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled since July 2, 2018, the date the application was filed. (Tr. 20.) Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12.)

I.  **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

II.  **Discussion**

### A.  Issues on Appeal

Plaintiff raises three issues on appeal all of which relate to the ALJ's consideration of her intellectual functioning.  First, Plaintiff argues that "[t]he ALJ's determination that [her] [intelligence quotient ("IQ")] scores were not valid is an error of law."  (Doc. 17 at 15.)  Plaintiff explains that:

> The ALJ in this case rejected [Plaintiff's] IQ tests from school based upon a prior ALJ's finding that IQ tests of above 40 obtained before the age of 16 are generally current for no more than two years, citing POMS DI 24515.005.  This ALJ was then [sic] stated that [Plaintiff's] school IQ tests were "out of date" and thus not valid.  The ALJ then went on to state that there was no evidence of a valid IQ test on this record, and thus, [Plaintiff] could not meet the listing for an intellectual disorder.  Interestingly, that POM[S] the ALJ relied on to reject [Plaintiff's] school IQ tests states that "when results obtained in the past are incompatible with current behavior, current testing will be required."  POMS DI 24515.005. Thus, the POM[S] would require that the results of having an old or outdated IQ test is not to simply ignore the results, but to get current testing.  That is what the ALJ in this case refused to do.
> The three IQ tests given to [Plaintiff] over her school years were very consistent in rating her IQ in the 50's [sic] range on the Weschler test.  Although IQ's [sic] can change over time, the fact that [Plaintiff] was consistently rated in that range as a child should be enough evidence of an intellectual problem as to required [sic] current testing, not assumption that [Plaintiff] somehow improved her intellectual abilities so that there were no problems in this area.  This is especially true since Peace River diagnosed her with borderline intellectual functioning as an adult."

(Tr. 15-16 (internal citations omitted).)

Plaintiff's second argument is that substantial evidence does not support the ALJ's determination that there was no finding of significant

3

deficits in adaptive functioning. (*Id.* at 17.) Despite the ALJ's conclusion of no significant deficits of adaptive functioning, Plaintiff asserts, "there was much evidence of [Plaintiff's] limitations in her ability to learn, and use conceptual, social, and practical skills in dealing with common life demands, as well as her dependence on others to care for [her] personal [needs]." (*Id.* at 20.) Lastly, Plaintiff argues that the ALJ failed to fulfill his duty to develop the record by refusing to obtain a consultative evaluation that included an IQ test. (*Id.* at 24.)

    Defendant responds that Plaintiff's argument that three IQ tests from grade school should satisfy Listing 12.05 was properly rejected and that her reliance on *Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001) to suggest that IQ scores are always valid was misplaced. (Doc. 18 at 8.) As to Plaintiff's second argument, Defendant discussed the ALJ's findings as they relate to Plaintiff's objective medical records and explained that "Plaintiff attempts to overcome the substantial evidence supporting the ALJ's decision almost exclusively through her own statements, many of which are inconsistent with other notes in the record." (*Id.* at 13.) Regarding Plaintiff's third issue, the ALJ's duty to develop the record, Defendant argues that remand "would not change the outcome on the ultimate finding of disability because the ALJ appropriately found that Plaintiff did not have any more than moderate mental limitations." (*Id.* at 15.)

4

### B. The ALJ's Decision

At step one of the sequential evaluation process[2], the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since July 2, 2018. (Tr. 22.) At step two, he found that Plaintiff had the following severe impairments: "diabetes mellitus, history of uterine fibroids status post hysterectomy, obesity, borderline intellectual functioning, and depression." (*Id*.) Then, at step three, the ALJ stated that "[t]he severity of the claimant's mental impairments, considered singly and in combination, [did] not meet or medically equal the criteria of listing 12.04, 12.05, and 12.11." (Tr. 24.)

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: "[frequent] climb[ing], balance[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing]"; avoiding concentrated exposure to extreme cold or heat, humidity, vibration, and workplace hazards, including unprotected heights and moving machinery; and limited to simple, routine tasks with no fast pace production work and without strict production demands. (Tr. 27.) The ALJ explained:

> The claimant's representative argued that the claimant had an intellectual disorder that meets listing 12.05; however, there is no support for finding an intellectual disorder.

---

[2] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 416.920(a).

> When the claimant was in first grade, she had an evaluation with intelligence testing. However, it was noted the claimant demonstrated the type of test behavior that would seem to depress her score and therefore the validity of the testing was questioned. It was further noted that the evaluation indicated the claimant had the potential to function in the borderline range or perhaps higher. Her withdrawn behavior and unwillingness to communicate make her low test scores suspect and a valid estimate of her ability could not be obtained at this time. She had further testing in third grade at the age [of] nine that found similar intelligence scores resulting from testing; however, there is no later testing in evidence (Exhibit C21F). In addition, as was pointed out in the prior decision, IQ results of 40 and above obtained before the age of sixteen are generally current for no more than two years, making her prior test results out of date (POMS DI 24515.055). It was also noted [that] the claimant had no more recent intellectual testing to indicated [sic] present IQ in this range and therefore the claimant did not have a valid IQ in the range to qualify as intellectual disorder and did not meet the criteria of listing 12.05.
> . . .
>
> Further, even if the claimant [was] found to have an IQ to qualify as intellectual disorder, the claimant does not show significant deficits in adaptive functioning currently manifested by dependence upon others for personal needs and the claimant does not have significant deficits in adaptive functioning currently manifested by extreme limitation in one of the B criteria area, or marked limitation of two of the B criteria areas of mental functioning. The undersigned [finds] there is no support for a finding of intellectual disorder and the claimant does not meet or medically equal listing 12.05.
> . . .
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant alleged that she was in ESE classes in school and has difficulty with reading, but indicated that she can add and subtract. . . .
>
> In interacting with others, the claimant has a moderate limitation. According to her statements, the claimant is also able

6

> to get along with others, shop, take public transportation, and deal appropriately with authority. . . .
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant reported she can prepare simple meals, watch television, play games, and count change. Additionally, the record fails to show significant distractibility. . . .
>
> As for adapting or managing oneself, the claimant has experienced a mild limitation. The claimant stated that she is able to handle self-care and personal hygiene with some help from her husband due to physical limitations, care for pet, and provide care for her mother-in-law (Exhibits C5E, C14E, C23F). . . .
>
> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

(Tr. 24-26.)

At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 35.) Finally, at step five, considering Plaintiff's age, education, work experience, RFC, and the vocational expert's ("VE") testimony, the ALJ found that there were jobs existing in significant numbers in the national economy that the Plaintiff can perform, including hotel housekeeper, price marker, and office helper. (Tr. 36.)

### C. Vocational Expert's Testimony

During hypothetical questioning by the ALJ, the VE testified as

7

follows:

> Q.   Okay. I'd like to assume then a hypothetical individual—let me see here . . . with . . . a limited education, with the same age as the claimant [sic]. And further assume that the education that the individual would be limited [to], for the first hypothetical, the individual [would] be limited to light work as it is defined by the Dictionary of Occupational Titles. But the individual [would] be limited to frequent—no more than frequent climbing and that includes ladders, ropes, scaffolds, ramps, and stairs. Frequent balanc[ing], stoop[ing], kneel[ing], crouch[ing], and crawl[ing]. They would need to avoid concentrated exposures to extremes in cold temperature as well as extremes in heat, humidity, vibration, and workplace hazards, which I'm defining as moving mechanical parts and unprotected heights. The individual will be limited to simple routine tasks. No [fast-paced] work, and . . . work would have to be without strict production demands. Also, limited to frequent interaction with supervisors and coworkers. Occasional interaction with the public. . . . Could the hypothetical individual perform any other work—any work in the workforce and, if so, could you give me a few examples with numbers of jobs for each?
> . . .
>
> A.   Jobs that I could identify would include the job of a hotel housekeeper. 323.687-014, light, unskilled, SVP 2, reasoning level is 1. Approximately 219,000 existing jobs in the national economy. The job of price marker. 209.587-034, light, unskilled, SVP 2, reasoning level 2, approximately 124,000 existing jobs in [the] national economy. The job of an office helper. 239.567-010, light, unskilled, SVP 2, reasoning level 2, approximately 14,000 existing jobs in the national economy.

(Tr. 74-73.)

### D.   Standard for Evaluating Evidence of Intellectual Disability

20 C.F.R. Pt. 404, Subpt. I, § 12.05B governs listing level impairment for mental disability. For an impairment to meet listing 12.05, it must

satisfy both (1) the diagnostic description for intellectual disability as set forth in the listing's introductory paragraph and (2) one of four additional sets of criteria (listed in subparagraphs (A) through (D)).  *See* 20. C.F.R. pt. 404, subpt. P, app. 1 §§ 12.00, 12.05 (2017); *see also* 20 C.F.R. § 416.925.  Listing 12.05B requires (1) qualifying IQ scores (70 or below full scale score, or 71-75 full scale score with accompanying verbal or performance scores of 70 or below); (2) significant deficits in adaptive functioning currently manifested by one extreme limitation or two marked limitations in the following areas of mental functioning: (a) understanding, remembering, or applying information, (b) interacting with others, (c) concentrating, persisting, or maintaining pace, or (d) adapting managing oneself; and (3) evidence that the disorder began before age 22.  20 C.F.R § 416.925(a); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B.  The Social Security Administration's Program Operations Manual System ("POMS") defines "adaptive functioning" as an individual's "progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age."  POMS DI 24515.056.D.2.

      **E.**    **Analysis**

      The Court finds that the ALJ's decision is based on correct legal standards and is supported by substantial evidence in the record.  First, the ALJ's conclusion that Plaintiff's IQ scores were invalid was proper.  The ALJ

rejected the scores because they were outdated, with the most recent score being from 1985 when Plaintiff was 12 years old. (Tr. 569-71, 1007-15.) In doing so, the ALJ made no error of law, and Plaintiff's reliance on *Hodges,* 276 F.3d 1265, as Defendant argues, is misplaced. (Doc. 17 at 15.) "The [*Hodges*] presumption[3] applies only for valid tests, and [Plaintiff] cannot rely on the presumption because her [35-year-old] IQ test[s] [were] too remote in time under the regulations." *Hoyett v. Colvin*, No. 3:15-CV-344-GMB, 2016 WL 4942009, at *4 (M.D. Ala. Sept. 15, 2016). *See also Lewis v. Astrue*, No. CIV.A. 08-0583-CB-M, 2009 WL 1904319, at *3 (S.D. Ala. July 1, 2009) (finding that the ALJ's decision not to rely on the plaintiff's IQ test results from twenty years earlier was proper.)

Moreover, Plaintiff's statement that the ALJ's decision invalidating Plaintiff's IQ scores was an "assumption that [Plaintiff] somehow improved her intellectual abilities so that there were no problems in this area" is a mischaracterization of the ALJ's decision. (Doc. 17 at 16.) The ALJ did not "assume" that Plaintiff somehow improved nor did he assume that she did not have intellectual problems. Rather, the ALJ accounted for Plaintiff's intellectual limitations by adjusting her RFC accordingly. This is

---

[3] The presumption is an acknowledgment that, "absent evidence of sudden trauma," a person's IQ remains fairly constant throughout life. *Hodges*, 276 F.3d at 1268.

particularly evident by the ALJ incorporating greater limitations in Plaintiff's RFC than afforded by both state agency consultants. In his decision, the ALJ explained:

> The evidence provides support for finding of borderline intellectual functioning along [with] depression[,] causing moderate limitations to the claimant's ability to function, which is greater than found by both State agency reviewing consultants. However, it is noted that the information provided in her function reports documents her ability to function is not as limited as alleged and shows she is [independent] with her daily activities with most of the reported limitation attributed to pain.

(Tr. 35 (internal citations omitted).). Thus, the ALJ's decision finding Plaintiff's IQ scores invalid was supported by substantial evidence.

As to Plaintiff's second issue, the Court finds that the ALJ's finding of no significant deficits in Plaintiff's adaptive functioning was supported by substantial evidence. To meet the requirements of Listing 12.05B, Plaintiff needed to establish manifestation of deficits in adaptive functioning prior to the age of 22 and a valid verbal, performance, or full-scale IQ score of 71-75 or below. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. As discussed above, Plaintiff's IQ scores were invalid, and Plaintiff did not meet her burden in establishing a manifestation of deficits in adaptive functioning. In making this decision, the ALJ explained:

> Moreover, the overwhelming majority of the records decline to find deficits in adaptive function. In January 2014, the claimant was noted to have average intelligence. There was no axis II diagnosis provided. Overall, her mental health records make no

11

>findings or diagnosis related to the claimant's intellect nor is there any notation of concern for a significant deficit in cognitive functioning. Finally, the claimant previously reported she liked to cook[,] and she liked to read and do crossword puzzles.

(Tr. 33 (internal citations omitted).)

Even assuming *arguendo* that Plaintiff's IQ scores were valid, giving rise to a presumption that Plaintiff manifested deficits in adaptive functioning prior to age 22, the Defendant rebutted that presumption by presenting substantial evidence of Plaintiff's daily activities and behavior. Specifically, Plaintiff testified that she could not keep up with working as a McDonald's cook[4] due to the fast pace and because co-workers had to read things to her (Tr. 56, 63), but there is evidence showing that she stopped working as a result of a job-related injury, which her employer was "supposed to pay for[,] but did not." (Tr. 449.) Additionally, Plaintiff emphasizes the fact that she never lived alone, that her husband reminds her to take her medication, and that she cannot drive because she allegedly could not understand enough to pass the test. But Plaintiff's co-dependency and adaptive functioning are not so severely limiting, especially in light of record evidence showing that she assists with caring for her mother-in-law (Tr. 1049), enjoys cooking (Tr. 649), and navigates public bus routes with the help

---

[4] Plaintiff also testified that in addition to cooking, she worked as a cashier, cleaned tables and bathrooms, and mopped floors while working at McDonald's. (Tr. 56-57.)

of the bus driver (Tr. 67).

As to Plaintiff's final issue, the Court finds the ALJ's decision not to order a current consultative IQ test was legally sound and, therefore, not erroneous. It is well established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). Nevertheless, the plaintiff bears the burden of proving that she is disabled, and consequently, she is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "The [ALJ] has a duty to develop the record where appropriate[,] but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, there was sufficient evidence to determine whether Plaintiff was disabled, and additional evaluation by a medical expert was neither necessary nor required. The ALJ considered the record as a whole, which included opinions and records from Plaintiff's treating physicians, Plaintiff's testimony, the VE's testimony, and the opinions of two non-examining state agency consultants. While it is undisputed that Plaintiff was enrolled in ESE

classes, only completed an eighth-grade level of education, and has some difficulty reading, there were no gaps in the record that frustrated this Court's review of the ALJ's decision. (*See* Tr. 307 (listing State agency reviewing psychologist's note that Plaintiff has limited social interaction but can pay attention, follow instructions, and get along with people); Tr. 585 (listing Peace River Center's mental status exam note that Plaintiff's intelligence estimate was average); Tr. 521 (reporting that Plaintiff finds writing down spoken instructions helpful); Tr. 56 (testifying that she can do addition and subtraction); Tr. 607 (reporting that Plaintiff spends most of her time watching television and doing crossword puzzles).)

Thus, although an ALJ is responsible for developing a full and fair record, the burden is still on the Plaintiff to prove she is disabled. Even if another medical expert had been employed to evaluate her potential disability, "[Plaintiff] would not have qualified for SSI benefits based on her failure to show deficits in her adaptive functioning." *Prunty v. Acting Com'r of Soc. Sec. Admin.*, 635 F. App'x 757, 760 (11th Cir. 2015).

### III.  Conclusion

The Court does not make independent factual determinations, reweigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on de novo review; rather, the Court's review is limited to determining whether

the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **ORDERED**:

1.   The Commissioner's decision is **AFFIRMED**.

2.   The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 14, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record